**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

COURTNEY M. BOYD,

        Petitioner,

v.                              Case No. 06-CV-13306

LINDA METRISH,

        Respondent.

_____/

**OPINION AND ORDER DENYING PETITION**
**FOR A WRIT OF HABEAS CORPUS**

Petitioner Courtney M. Boyd, a Michigan prisoner, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of five counts of first-degree criminal sexual conduct, Mich. Comp. L. § 750.520b, following a 2002 joint jury trial with co-defendant Allen Gay in Wayne County Circuit Court. He was sentenced to concurrent terms of 10 to 30 years imprisonment on those convictions. In his pleadings, Petitioner raises claims concerning the trial court's grant of a continuance for DNA testing, the trial court's refusal to appoint a DNA expert or grant a defense continuance and the admission of alleged hearsay evidence. For the reasons stated, the court denies the petition for a writ of habeas corpus.

## I. BACKGROUND

Petitioner's convictions arise from the gang rape of a 13-year-old girl on May 30, 2001 in Detroit, Michigan. The Michigan Court of Appeals set forth the underlying facts, which are presumed correct on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d

753, 758 (E.D. Mich. 2001), *aff'd.* 41 Fed. Appx. 730 (6th Cir. 2002). The facts are as

follows:

> Defendants' convictions arise from allegations that, on the afternoon of
> May 30, 2001, defendants and their three accomplices, Darnell Matthews,
> Antonio Avery, and De'Angelo Avery, sexually assaulted the
> thirteen-year-old victim. The victim testified that, as she was walking from
> her home to a neighborhood gas station, defendants and their
> accomplices, whom the victim knew from her neighborhood, called out to
> her from the doorway of the Avery house. According to the victim, the
> males told her to "[c]ome here," and called her a "stanky bit* * " and "a
> hoe." As the victim continued walking, the five males approached her and
> began shoving her. The group eventually pushed her to the Avery house,
> and Matthews picked her up and carried her into the dining room.
>
> Once inside, the five males punched the victim in her face, arms, and
> back. The group then pushed her toward the staircase, and two of the five
> males carried her upstairs. Once upstairs, the group pushed her onto a
> bed and held her down. Antonio then pulled down her blue jeans and
> panties, as others held down her arms. She could not see who was
> restraining her because her eyes were closed and she was crying. Antonio
> first had sexual intercourse with her by inserting his penis into her vagina,
> followed by De'Angelo and Darnell in the same manner. After Darnell
> finished, someone flipped the victim over, and defendant Boyd had sex
> with her "in her behind." After Boyd finished, someone flipped the victim
> back over, and Gay had vaginal intercourse with her. According to the
> victim, the five males threatened to kill her if she told anyone about the
> incident. The victim put on her pants and ran home.
>
> The victim did not talk to anyone about the incident until her mother
> confronted her with neighborhood rumors weeks later. The victim
> indicated that she did not tell anyone previously because she was afraid
> that she would be killed by the perpetrators and punished by her mother.
> On June 11, 2001, the victim's mother took her to the police to report the
> incident and gave the police the blue jeans the victim was wearing during
> the incident.
>
> A Detroit police deoxyribonucleic acid (DNA) expert testified that the
> crotch area of the victim's jeans tested positive for both blood and semen.
> The victim was the major contributor of the DNA in the sample. The test
> results excluded Gay as a possible contributor of the semen. Out of eight
> genetic sites, Boyd could not be excluded as a minor contributor of the
> semen at three of the sites; he could be excluded at the remaining five
> sites. The expert indicated that "not enough DNA" could have caused the

"weak sample." It could not be determined if the semen was from more than one person because there was an insufficient amount of cells to obtain a complete profile of the eight genetic sites.

*People v. Boyd*, No. 246721, 2004 WL 2072048, *1 (Mich. Ct. App. Sept. 16, 2004).

Additional relevant facts are included in the body of this opinion.

At the close of trial, the jury found Petitioner guilty of five counts of first-degree criminal sexual conduct. The trial court subsequently sentenced him to concurrent terms of 10 to 30 years imprisonment.

Following his convictions and sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals asserting several claims, including those raised in his habeas petition. The Michigan Court of Appeals affirmed Petitioner's convictions. *See People v. Boyd*, No. 246721, 2004 WL 2072048 (Mich. Ct. App. Sept. 16, 2004). Petitioner sought leave to appeal with the Michigan Supreme Court asserting the same claims. The Michigan Supreme Court denied leave to appeal. *People v. Boyd*, 472 Mich. 895, 695 N.W.2d 72 (2005).

Petitioner thereafter filed the present petition for a writ of habeas corpus asserting the following claims:

I.      Petitioner's conviction was both unconstitutional and unlawful, violative of due process of law, where the trial court, over objection, granted the People a continuation in the midst of Petitioner's jury trial, only to resume trial over five months later.

II.     Petitioner's trial was both unconstitutional and unlawful, violative of the Sixth and Fourteenth Amendments, when the trial court, after a five-month continuance granted to the People, refused to appoint the indigent Petitioner a DNA expert, denied Petitioner an adjournment and, thereafter, gave Petitioner's counsel just fifteen minutes to prepare to cross-examine the People's DNA expert.

III.    Petitioner Sixth Amendment right to confrontation was violated when the trial court allowed, over Petitioner's objection, hearsay testimony from the complainant that "everybody [in the neighborhood] knew about" her sexual assault.

Respondent has filed an answer to the petition asserting that it should be denied for lack of merit.

## II.  DISCUSSION

### A.  Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*,

529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## B. Exhaustion

As an initial matter, Respondent alleges that the petition should be dismissed because Petitioner has failed to fairly present his third habeas claim concerning the admission of evidence and the denial of his confrontation rights as a federal constitutional issue in the state courts. A prisoner filing a petition for a writ of habeas corpus under 28 U.S.C. §2254 must first exhaust all state remedies. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("state prisoners must give the state courts one full fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). A Michigan prisoner must raise each issue he seeks to present in a federal habeas proceeding to both the Michigan Court of Appeals and the Michigan Supreme Court to satisfy the exhaustion requirement. *See Mohn v. Bock*, 208 F.2d 796, 800 (E.D. Mich. 2002); *see also Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). The burden is on the petitioner to prove exhaustion. *Rust*, 17 F.3d at 160.

The court agrees that Petitioner did not fairly present this claim as a federal confrontation claim in the state courts. He has thus failed to fully exhaust his state court remedies as to this issue. Generally, a federal district court should dismiss a "mixed" habeas petition, one containing both exhausted and unexhausted claims, "leaving the prisoner with the choice of returning to state court to exhaust his claims or

6

amending and resubmitting the habeas petition to present only exhausted claims to the district court." *Rose v. Lundy*, 455 U.S. 509, 510, 522 (1982); *see also Rust*, 17 F.3d at 160. While the exhaustion requirement is strictly enforced, it is not a jurisdictional prerequisite for bringing a habeas petition. *Granberry v. Greer*, 481 U.S. 129, 134-35 (1987). For example, an unexhausted claim may be addressed if pursuit of a state court remedy would be futile, *Witzke v. Withrow*, 702 F. Supp. 1338, 1348 (W.D. Mich. 1988), or if the unexhausted claim is meritless such that addressing it would be efficient and not offend federal-state comity. *Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *see also* 28 U.S.C. § 2254(b)(2) (habeas petition may be denied on the merits despite the failure to exhaust state remedies). A federal court also has discretion in "limited circumstances" to stay a mixed habeas petition to allow a petitioner to present his unexhausted claims to the state courts and then return to federal court on a perfected petition. *See Rhines v. Weber*, 544 U.S. 269 (2005).

In this case, the court finds that the interests of justice would be best served by adjudicating Petitioner's habeas claims. Further attempts at exhaustion in the state courts are likely to be futile. Additionally, the unexhausted claim lacks merit and may be denied on the merits despite the lack of exhaustion. The court will therefore proceed to the merits of Petitioner's claims.

### C. Grant of Continuance for DNA Testing Claim

Petitioner first asserts that he is entitled to habeas relief because the trial court granted the prosecution a continuance for DNA testing on the victim's clothing and then did not resume the trial for five months. Respondent contends that this claim lacks merit.

A trial court has broad discretion in determining whether to grant or deny a

motion for a continuance or adjournment in a criminal case. *See Unger v. Sarafite*, 373

U.S. 575, 589 (1964); *see also Morris v. Slappy*, 461 U.S. 1, 11 (1983) (recognizing

that trial courts have "broad discretion" in matters related to continuances). When a

habeas petitioner challenges the grant or denial of such a request, not only must there

have been an abuse of discretion, the trial court's decision "must have been so

arbitrary and fundamentally unfair that it violates constitutional principles of due

process." *Bennett v. Scroggy*, 793 F.2d 772, 774-75 (6th Cir. 1986).

On direct appeal, the Michigan Court of Appeals denied relief on this claim,

stating as follows:

> Defendant Boyd first argues that the trial court abused its discretion by
> granting the prosecution an adjournment "in the midst of" trial, which
> lasted five months. We disagree.
>
> On March 7, 2002, the first day of trial, codefendant Gay's attorney
> requested production of the blue jeans that the victim was wearing during
> the incident after an investigating officer indicated that the jeans had
> been turned over to the police in June 2001. In August 2001, the jeans
> were sent to the police crime lab for testing. The prosecution had
> previously requested any scientific lab reports available from the jeans.
> None was provided. The investigating officer explained that once the
> crime lab performs an analysis, a report is sent to the investigating
> officer. However, she never received a report in this case. After calling
> the lab on the morning of the second day of trial, the officer was faxed a
> copy of the analysis on the jeans, and the jeans were returned. According
> to the report, blood and semen were found on the victim's jeans. The
> officer explained that, at that point, no DNA analysis had been performed
> and no blood had been taken from either defendant because, before that
> day, she was unaware that anything had been found on the jeans.
>
> As a result of the report, the prosecutor requested an adjournment and
> an order directing the Detroit police to perform an expedited DNA
> analysis. Defense counsel stated, "At this moment, Judge, I place my
> objection to the prosecutor's request before the Court." In granting the

adjournment to allow DNA testing to be performed, the court stated, in part:

> The jury gets sent home. When everything is right, you bring them back. You prepare a transcript of all the testimony for them. You either reread it to them, or you give them the transcripts, and then you continue trial.
>
> * * *
>
> [T]his could be exculpatory evidence as well as something that would indict their client. And so I'm going to order the police department, Detroit Police Department, to do DNA testing.

On May 17, the parties reconvened and the trial court, after noting that it had checked the jurors' schedules, set a trial date of August 13. Defense counsel did not object.

"This Court reviews the grant or denial of an adjournment for an abuse of discretion." *People v. Snider*, 239 Mich App 393, 421; 608 NW2d 502 (2000). "No adjournments, continuances or delays of criminal causes shall be granted by any court except for good cause shown ..." MCL 768.2. MCR 2.503(C)(2) explains the standard for good cause for an adjournment in the following instance:

An adjournment may be granted on the ground of unavailability of a witness or evidence only if the court finds that the evidence is material and that diligent efforts have been made to produce the witness or evidence.

A defendant must show prejudice as a result of the trial court's alleged abuse of discretion in granting or denying an adjournment. *Snider, supra* at 421.

The trial court did not abuse its discretion by granting an adjournment to allow DNA testing on the victim's jeans. The defendants were charged with five counts of first-degree criminal sexual conduct. Evidence regarding DNA analysis of semen found on the victim's jeans was material. As the court noted, the evidence could have either exonerated or implicated defendant Boyd. Also, the record does not support a conclusion that the prosecution failed to exercise diligence in this matter. The investigating officer indicated that it was unknown to the police until the second day of the trial that possible evidence, i.e., blood and semen, was found on the jeans. The officer confirmed that, previously, the prosecutor "and other members of [his] office" had contacted the police and requested any scientific evidence. In sum, given the nature and

gravity of the case and the evidence involved, it "'promote[d] the cause of justice' to grant an adjournment in this case." *See People v. Grace*, 258 Mich App 274, 277; 671 NW2d 554 (2003), quoting MCR 2.503(D)(1). Accordingly, this claim does not warrant reversal.

Within this issue, defendant Boyd argues that the lengthy, five-month adjournment was prejudicial for several reasons. He claims that the case was adjourned with the jurors having a "one-sided view" of the case, the "long delay impaired the jurors' ability to recall events while deliberating," and that "it is reasonable to believe that at least some of the jurors were upset and resentful over their treatment." However, defendant Boyd has not demonstrated that the challenged delay precluded a fair determination of the charges against him. According to the record, when the court set the date for the continuation of trial, defense counsel did not object. Furthermore, when trial resumed, the jurors were provided with the transcript of the testimony of the four witnesses (the victim, her mother, and the two investigating officers) who testified before the adjournment in the event they needed to refresh their memories. Although defendant Boyd claims that the jurors were left with a "one-sided view," the record reflects that defense counsel cross-examined the witnesses at length. We also note that, when trial resumed, defendant Boyd did not present any witnesses. Finally, defendant Boyd's speculative, unsupported claims of prejudice as a result of the possible effects that the adjournment had on the jurors fails to present a basis for relief.

Defendant Boyd also claims that he was prejudiced by the court failing to instruct the jury that the prosecution caused the adjournment, and by failing to properly address the jury's note about missing pages from the transcript. But the record reflects that, in each of these instances, defense counsel either acquiesced or expressed satisfaction with the trial court's actions. Because any objections were waived, there are no errors to review.

*Boyd*, 2004 WL 2072048 at *3-5 (footnote omitted).

Having considered the matter, the court finds that the Michigan Court of Appeals' decision is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law or the facts. The trial court's action in granting the continuance was reasonable given the potential importance of the DNA testing to both the prosecution and defense cases and the fact that there is no evidence of bad

10

faith or intentional delay by the prosecution. Courts have ruled that similar, albeit less lengthy, mid-trial delays pass constitutional muster. *See Cooper v. Costello*, 112 F.3d 503, 1997 WL 219083, *1 (2nd Cir. 1997) (unpublished) (six-week delay caused by defense counsel's illness); *United States v. Smith*, 44 F.3d 1259, 1267-68 (4th Cir. 1995 (32-day mid-trial continuance for district judge's vacation and co-defendant's illness); *Hamilton v. Vasquez*, 17 F.3d 1149, 1159 (9th Cir. 1994) (two-week delay for trial judge's winter vacation).

More importantly, Petitioner has provided no factual support for his assertion that he was prejudiced by the continuance or the mid-trial delay. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See, e.g., Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not warrant habeas relief); *Wogaman v. Wells*, 884 F.2d 1393, 1989 WL 106578, *5 (6th Cir. 1989) (unpublished) (denying habeas relief where petitioner failed to show that pre-trial or mid-trial delays were prejudicial – "a critical and essential consideration").

Petitioner claims that he was prejudiced by the mid-trial delay because the prosecution's case was essentially over and the jurors were left with a "one-sided view" of the case. This claim is unavailing, however, as it can just as easily be said that the prosecution's case faded in jurors' minds during the break in trial. *See Smith*, 44 F.3d at 1268. Furthermore, the record reveals that defense counsel extensively cross-examined prosecution witnesses before the break and did not present any defense witnesses after the break. Petitioner also claims that the mid-trial delay impaired the jurors' ability to accurately recall events while deliberating. The court acknowledges

that such a lengthy delay could have impaired the jurors' recollections of the trial testimony. However, the trial court took appropriate steps to alleviate this potential problem by ensuring that the jurors had access to transcripts of the witnesses' testimony when the trial resumed. Petitioner also asserts that the jurors were frustrated by the process and could have been exposed to improper influences during the delay. These allegations are pure speculation, however, and there is no evidence in the record to support them. The trial court instructed the jury about the proper consideration of the case and the evidence presented at trial. Given such circumstances, Petitioner has failed to establish that the continuance and mid-trial delay violated his constitutional rights. Habeas relief is not warranted on this claim.

## D. Denial of Defense DNA Expert and Continuance

Petitioner next asserts that he is entitled to habeas relief because the trial court refused to provide a DNA expert for the defense and denied the defense request for a continuance to evaluate the DNA evidence and prepare for cross-examination of the prosecution's expert witness. Respondent contends that this claim lacks merit.

The right of an accused to present a defense has long been recognized as "a fundamental element of due process." *Washington v. State*, 388 U.S. 14, 19 (1967). However, "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). Indeed, "[a] defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id.* (internal quotations omitted). Additionally, as discussed *supra*, a trial court has broad discretion in determining whether to grant or deny a defendant's motion for a continuance in a

criminal case. *See Unger*, 373 U.S. at 589; *see also Morris*, 461 U.S. at 11. "When a denial of a continuance forms the basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process."

*Bennett*, 793 F.2d at 774-75.

The Michigan Court of Appeals denied relief on this claim, stating as follows:

Defendant next argues that the trial court abused its discretion by denying his motion for a mistrial, and his alternative request for an adjournment to prepare to cross-examine the DNA expert and to obtain a defense expert to review the DNA evidence. FN3 We disagree.

FN3. Although defendant Boyd frames a portion of this issue as the trial court's refusal to appoint an expert for an indigent defendant, he never requested the appointment of an expert. Rather, defense counsel requested "ample time to deal with this [DNA evidence], or at least ... the chance to find an opposing expert who can examine this."

After the March 8, 2002 adjournment, the trial court ordered the parties to come to court on May 24, because the DNA analysis would be faxed that day. The DNA testing results were faxed, but defense counsel left the courtroom before the fax arrived and did not subsequently obtain a copy. After trial resumed on August 13, the DNA expert testified that defendant Boyd could not be excluded as a minor contributor of the semen found on the blue jeans at three out of eight genetic sites. After the direct examination of the expert, defense counsel requested a mistrial or, in the alternative, an adjournment to prepare for cross-examination or to obtain an expert to examine the DNA testing results. Defense counsel maintained that he "never got the report," and that he was told in May that the results were "inconclusive."

The trial court declined to grant a mistrial or an adjournment. The court noted that, because it wanted to insure that all parties received the DNA evidence, it ordered the parties to be in court on May 24, to receive the results, but defense counsel left before the results were faxed. The court concluded that, after learning that the results were available, it was incumbent on the defense to obtain a copy of the report, or advise the court before trial that it did not receive a copy. The court noted the history of the case, and indicated that, when the case was adjourned in March, defense counsel was aware that there would be DNA testimony when trial

resumed. The court reiterated that it granted the original adjournment because the evidence could have benefitted the defendants, noting that it was positive for Gay and could be interpreted as positive for Boyd.

This Court reviews a trial court's ruling on a motion for a mistrial for an abuse of discretion. *People v. Griffin*, 235 Mich App 27, 36; 597 NW2d 176 (1999). "A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *Id.* (citation omitted).

As previously indicated, a denial of an adjournment is also reviewed for an abuse of discretion. *Snider, supra* at 421. In this context, "[s]ome factors to be considered include whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments." *People v. Lawton*, 196 Mich App 341, 348; 492 NW2d 810 (1992) (citation omitted). A defendant must also demonstrate prejudice. *Snider, supra* at 421.

The trial court acted within its discretion when it denied defendant Boyd's motion for a mistrial and his request for an adjournment. The record does not support defendant Boyd's suggestion that defense counsel was somehow surprised by testimony regarding DNA testing results and, thus, denied the opportunity to adequately prepare to attack the DNA evidence. As noted by the trial court, defense counsel was aware that there would be some DNA testimony as a result of the March 8 adjournment. Thereafter, defense counsel was a ware in May that the DNA testing report had been completed and should have obtained it before August. Nevertheless, giving due regard to the circumstantial nature of the challenged evidence, the record does not demonstrate the necessity for an adjournment or an expert where defendant Boyd was able to adequately present his attack on the DNA evidence through cross-examination. As previously indicated, the expert testified that the sample was "weak" and that defendant Boyd could not be excluded as a minor contributor at only three out of eight genetic sites. In addition, on appeal, defendant Boyd does not suggest what exculpatory evidence a defense expert could have provided. Nor does he indicate what additional questions he was not able to pursue because of the denial of an adjournment. "A party may not merely state a position and then leave it to this Court to discover and rationalize the basis for the claim." *Griffin, supra* at 45.

Moreover, defendant Boyd has failed to show that the evidence unfairly prejudiced him. As previously indicated, the victim was familiar with defendant Boyd from the neighborhood, and knew him by his nickname.

> The victim identified defendant Boyd as one of the five assailants and
> testified that he had anal intercourse with her while she was being held
> down. The victim had an ample opportunity to view defendant Boyd
> before and during the incident. The victim did not waver on her
> identification of defendant Boyd. Therefore, even without the DNA
> evidence, there was ample evidence to support defendant Boyd's
> conviction. In sum, this claim does not warrant reversal.

*Boyd*, 2004 WL 2072048 at *5-6.

The Michigan Court of Appeals' decision is neither contrary to United States

Supreme Court precedent nor an unreasonable application of the law or the facts.

Petitioner has identified no clearly established federal law as determined by the United

States Supreme Court which entitles him to an independent expert as necessary to

obtain habeas relief under 28 U.S.C. § 2254(d)(1). The only case arguably on point is

*Ake v. Oklahoma*, 470 U.S. 77 (1985). The Supreme Court's holding in *Ake*, however,

was limited:

> We therefore hold that when a defendant demonstrates to the trial judge
> that his sanity at the time of the offense is to be a significant factor at trial,
> the State must, at a minimum, assure the defendant access to a
> competent psychiatrist who will conduct an appropriate examination and
> assist in evaluation, preparation, and presentation of the defense.

*Id.* at 83. The Supreme Court did not discuss a defendant's entitlement to other court-

appointed experts outside the context of an insanity defense. Subsequent to *Ake*, the

Supreme Court has explicitly declined to answer this question. *See Caldwell v.*

*Mississippi*, 472 U.S. 320, 323 n.1 (1985).

In light of the language of *Ake* and the Court's reservation in *Caldwell*, there is

disagreement over whether *Ake* requires the provision of expert services beyond

psychiatric services necessary to present an insanity defense. *Cf. Terry v. Rees*, 985

F.2d 283, 284 (6th Cir. 1993) (petitioner denied opportunity to present an effective

defense by failure to appoint independent pathologist); *McKenzie v. Jones*, 100 Fed. Appx. 362, 364-65 (6th Cir. 2004) (petitioner has no constitutional right to the appointment of an expert of his personal liking or to receive funds to hire his own); *Conklin v. Schofield*, 366 F.3d 1191, 1206 (11th Cir. 2004) (noting that the Supreme Court has not extended *Ake* to non-psychiatric experts); *Brewer v. Cason*, No. 1:05-CV-118, 2006 WL 3103212, *12-13 (W.D. Mich. Oct. 31, 2006) (same); *Fitzpatrick v. Renico*, No. 05-CV-70107, 2006 WL 2069514, *10-12 (E.D. Mich. July 26, 2006) (citing *Ake* and stating that the Supreme Court "has never extended the state's obligation to provide expert assistance beyond psychiatric examination").

Under the AEDPA, however, the question is not whether this court, or the United States Court of Appeals for the Sixth Circuit, would extend *Ake* to require the provision of non-psychiatric experts. Rather, the question is whether *Ake* clearly establishes Petitioner's right to the appointment of such experts. In pre-AEDPA cases, courts have held that extending *Ake* to non-psychiatric experts would amount to a "new rule" of constitutional law which could not be applied on collateral review under the Supreme Court's decision in *Teague v. Lane*, 489 U.S. 288 (1989). *See Gray v. Thompson*, 58 F.3d 59, 66 (4th Cir. 1995), *vacated on other grounds*, 518 U.S. 152 (1996); *Jackson v. Ylst*, 921 F.2d 882, 885-86 (9th Cir. 1990). The *Teague* rule is "the functional equivalent" of the clearly established law requirement of § 2254(d)(1), *see Williams*, 529 U.S. at 379 (opinion of Stevens, J.), and thus a rule which fails to satisfy *Teague* also fails to satisfy § 2254(d)(1). *Id.* at 380 (opinion of Stevens, J.); *id.* at 412 (opinion of O'Connor, J., for the Court); *see generally Williams v. Cain*, 229 F.3d 468, 474-75 (5th Cir. 2000) (discussing relationship between *Teague* and § 2254(d)(1)). Thus,

Petitioner's asserted right to the appointment of a DNA expert (*i.e*, a non-psychiatric expert) was not clearly established law under § 2254(d)(1) at the time of his convictions.  *See Weeks v. Angelone*, 4 F. Supp. 2d 497, 521-22 (E.D. Va. 1998), *aff'd*, 176 F.3d 249, 264-65 (4th Cir. 1999), *aff'd on other grounds*, 528 U.S. 225 (2000). Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

Furthermore, even if *Ake* could be viewed as establishing a right to a DNA expert in a case such as this one, Petitioner has not established that the trial court's failure to appoint a DNA expert or grant a continuance deprived him of a substantial defense or otherwise rendered his criminal proceedings fundamentally unfair.  As discussed by the Michigan Court of Appeals, the prosecution's DNA expert testified that the sample was "weak" and that Petitioner could not be excluded as a minor contributor at three out of eight genetic sites.  Such evidence, while somewhat inculpatory, was not particularly conclusive.  Nor was such evidence vital to the prosecution's case given that the victim testified that she knew Petitioner from the neighborhood and identified him as one of her assailants.  Petitioner has not shown what exculpatory evidence could have been discovered through the appointment of a defense DNA expert or the grant of continuance.  He has thus failed to establish that he was prejudiced by the trial court's refusal to appoint an expert or grant the defense additional time to investigate the evidence.

Further, the record indicates that defense counsel was well aware of the possibility that DNA evidence would be utilized when the trial resumed and had ample opportunity to obtain the results of the DNA testing and prepare for trial.  Petitioner has not shown how the appointment of a DNA expert or the grant of a continuance would

have likely benefitted the defense, nor has he challenged the testifying expert's scientific methods or conclusions. In the state courts and in this court, Petitioner has only speculated that the appointment of an expert witness or additional preparation time would have provided some unidentified assistance to his case. Such conclusory allegations are insufficient to justify federal habeas relief. *See Workman,* 160 F.3d at 287. Petitioner has failed to establish that the state court's decision is contrary to United States Supreme Court precedent or that it constitutes an unreasonable application of the law or the facts. Habeas relief is not warranted on this claim.

### E. Admission of Evidence/Confrontation Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because the trial court erred in admitting the victim's testimony that everyone in the neighborhood knew about the sexual assault. Petitioner asserts that this testimony was hearsay and that its admission violated his confrontation rights. Respondent contends that this claim is procedurally defaulted and lacks merit.

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006), *cert. denied*, _ U.S. _, 127 S. Ct. 578 (2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001). "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless

the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Here, the Michigan Court of Appeals rendered the last reasoned opinion. In denying relief on this claim, the court relied upon Petitioner's failure to object to the testimony at trial on the same ground raised on appeal. *See Boyd*, 2004 WL 2072048 at *6-7. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *See People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). The Michigan Court of Appeals denied this claim based upon a procedural default – the failure to properly object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). Petitioner neither alleges nor establishes cause to excuse this procedural default. A federal habeas court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983).

Nonetheless, the court notes that Petitioner cannot establish prejudice as this claim lacks merit. Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

The Michigan Court of Appeals concluded that the trial court did not err in admitting the victim's testimony because the challenged statements were not hearsay as they were not offered to prove the truth of any matter asserted. Rather, the statements explained why the victim told her mother about the sexual assault weeks after it had occurred. *See Boyd*, 2004 WL 2072048 at *7. To the extent that Petitioner challenges this ruling under the Michigan Rules of Evidence, he merely alleges a

violation of state law which does not entitle him to federal habeas relief.  *See, e.g.,*

*Wheeler v. Jones*, 59 Fed. Appx. 23, 28 (6th Cir. 2003).

Moreover, Petitioner is not entitled to relief on his claim that the admission of

this testimony violated his confrontation rights.  The Confrontation Clause of the Sixth

Amendment guarantees a criminal defendant the right to confront the witnesses

against him.  *See Davis v. Alaska*, 415 U.S. 308, 315 (1973).  The Sixth Amendment

protections are not so broad, however, as to exclude the admission of certain hearsay

statements against a criminal defendant despite his or her inability to confront the

declarant at trial.  *See Maryland v. Craig*, 497 U.S. 836, 847-48 (1990).  In *Crawford v.*

*Washington*, 541 U.S. 36, 54 (2004), the United States Supreme Court held that the

*testimonial* statement of a witness who does not appear at trial is inadmissible unless

the witness is unavailable to testify and the defendant has had a prior opportunity to

cross-examine the witness.  Testimonial statements include preliminary hearing

testimony, grand jury testimony, prior trial testimony, and statements made during

police interrogations.  *Crawford*, 541 U.S. at 54.  Testimonial statements do not include

remarks made to family members or acquaintances, business records, or statements

made in furtherance of a conspiracy.  *Id.* at 51-52, 56; *United States v. Martinez*, 430

F.3d 317, 328-29 (6th Cir. 2005); *see also United States v. Stover*, 474 F.3d 904, 912-

13 (6th Cir. 2007).  The victim's statements about what the neighbors knew were non-

testimonial in nature.  *Crawford* is thus inapplicable to the matter at hand.

Furthermore, the Supreme Court has made clear that the Confrontation Clause

is not implicated, and need not be considered, when non-testimonial hearsay is at

issue.  *See Davis v. Washington*, 547 U.S. 813, 823-24 (2006); *see also Whorton v.*

21

*Brockting*, _ U.S. _, 127 S. Ct. 1173, 1183 (2007); *United States v. Arnold*, 486 F.3d 177, 192-93 (6th Cir. 2007) (en banc). Petitioner has not shown that the admission of the challenged testimony violated his confrontation rights or otherwise rendered his trial fundamentally unfair.

Petitioner has also not shown that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. His admission of evidence/confrontation claim is thus barred by procedural default, lacks merit, and does not warrant habeas relief.

For all of these reasons, the court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition.

### III. CONCLUSION

IT IS ORDERED that the petition for a writ of habeas corpus is DENIED and DISMISSED WITH PREJUDICE.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  July 25, 2008


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 25, 2008, by electronic and/or ordinary mail.

s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522